UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SARAH POWERS-BARNHARD,

                                *Plaintiff*,

    -against-

RICK BUTLER, CHERYL BUTLER, GLV, INC.
d/b/a SPORTS PERFORMANCE VOLLEYBALL
CLUB and GREAT LAKES CENTER, and
U.S.A. VOLLEYBALL,

                                *Defendants.*
-------------------------------------------------------------------X

Docket No.: 5:19-CV-1208

MEMORANDUM OF
LAW IN OPPOSITION
TO DEFENDANT
USAV'S MOTION TO
DISMISS

Plaintiff Sarah Powers-Barnhard respectfully submits this memorandum in opposition to Defendant USA Volleyball's ("USAV") Motion to Dismiss the Complaint filed by Plaintiff Sarah Powers-Barnhard against USAV for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

On August 21, 2019, Plaintiff Sarah Powers-Barnhard filed a Verified Complaint in the New York State Supreme Court - County of Onondaga against Defendants Rick Butler, Cheryl Butler, GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center, and U.S.A. Volleyball. The Complaint was served on Defendant U.S.A. Volleyball on August 28, 2019. On September 27, 2019 USAV filed a notice of removal to the United States District Court for the Northern District of New York under diversity jurisdiction. On December 18, 2019, Defendant U.S.A. Volleyball filed a Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction in lieu of an answer.

As established below, this Court has general jurisdiction over USAV because USAV has such systematic and continuous relations with the state of New York as to render it at home in this

forum. Furthermore, the Court has specific jurisdiction under New York's Long Arm Statute and the claims do arise from actions and injury caused by USAV's negligent hiring, retention, and supervision of Rick Butler in New York, who sexually assaulted plaintiff when she was a minor in New York State. For these reasons detailed below, Defendant's Motion to Dismiss Plaintiff's Complaint fails in its entirety as this Court does have personal jurisdiction, and the Motion should be denied.

## STATEMENT OF FACTS

Plaintiff's claims arise when she was sexually abused as a child from sexual misconduct committed by her coach Rick Butler, a grown man, in Syracuse, New York in approximately July of 1981. Specifically, including sexual abuse when Defendant RICK BUTLER asked Ms. Powers-Barnhard to see him in an upstairs private lounge in the dormitory building in which their team was staying. In 1981, when these acts occurred, Defendant U.S.A. Volleyball was known as the United States Volleyball Association. Defendant U.S.A. Volleyball maintains offices and uses real and personal property throughout the State of New York by virtue of its Regional Volleyball Associations as detailed below. Furthermore, USAV has been sued in multiple jurisdictions, including, but not limited to Illinois, Indiana, California, and Tennessee (See Butler v. U.S.A. Volleyball, 673 N.E.2d 1063 (1996); Bell, Ph.D. v. Ball, et al., Case No.: 2:2011-cv-06851 (2011); DFA PVA II Partners LLC v. IMG Worldwide Inc., et al., Case No.: 1:2018-cv-00156 (2018); Mixon v. Memphis Volleyball Academy, Inc., et al., Case No.: 2:2014-cv-02166 (2014)) rendering its argument that it can only be "at home" in Colorado moot. As such, Defendant U.S.A. Volleyball has the contacts with New York necessary to subject it to personal jurisdiction here and it is well-established that New York State has jurisdiction for cases where the tort has occurred within the State.

## ARGUMENT

### Standard of Review

On a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2nd Cir. 1996). To meet this burden, "the plaintiff need only demonstrate that facts 'may exist' to exercise personal jurisdiction over the defendant." Cagan v. Gadman, 2010 WL 1686949 at 3* (E.D.N.Y. 2010). In determining if the Plaintiff has met this burden, courts construe "jurisdictional allegations liberally and take as true uncontroverted factual allegations." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994). As discussed in detail below, Plaintiff has shown that this Court does have both general and specific jurisdiction and given the sexual abuse complained of occurred in New York State, New York is the appropriate and proper forum for this case.

### A. The Complaint Alleges Sufficient Facts to Support General Jurisdiction

A court's general jurisdiction over a non-resident corporation such as USAV pursuant to CPLR §301, "is based on a defendant's general business contacts with the forum, and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 128 (2nd Cir. 2008). The touchstone of general jurisdiction over USAV as a foreign (sister-state) corporation is its "continuous and systematic" affiliations with the State of New York. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). In fact, USAV is *so* heavily engaged in activity in New York that general jurisdiction is easily conferred. USAV, was founded as the United States Volleyball Association (USVBA) in 1928 at the Yale Club in New York City, for the purpose of representing the sport nationally and internationally, and for conducting an annual

national open championship. (Attached hereto as Exhibit "1" is a true and correct copy of WEVA's "USA Volleyball History" Webpage). Defendant claims that USAV has "no badges or indicia of a corporate presence" in New York, yet failed to mention that its significant and pervasive presence in New York is widely recognized through its Regional Volleyball Associations. (Attached hereto as Exhibit "2" is a true and correct copy of Defendant USAV's "USAV Regions" Webpage). USAV's website proclaims that its Regional Volleyball Associations are the "backbone of USA Volleyball," of which multiple are in New York. Indeed, USAV's website directly and purposefully solicits and promotes its regional associations, directing potential players and/or club operators to "your local connection to USA Volleyball." The 40 "Regional Volleyball Associations" (RVAs) of USA Volleyball are each a Member Organization of USA Volleyball. The RVAs serve the grassroots function for USA Volleyball and collectively serve as a catalyst for USA Volleyball functions. Membership in an RVA also provides membership in USAV, with all of the associated benefits. (Attached hereto as Exhibit "3" is a true and correct copy of IREVA's "USA Volleyball" Webpage).

The Garden Empire Volleyball Association (GEVA) is the local Regional Volleyball Authority of USAV for the Greater Metropolitan Area of New York City. On their IRS Form 990 they claim that they are "the local authority of USA Volleyball, the national governing body of amateur volleyball, this organization promotes the sport in NJ and Greater New York City localities by sanctioning tournaments for recreational leagues and running Olympic volleyball programs." (Attached hereto as Exhibit "4" is a true and correct copy of GEVA's IRS Form 990). The Western Empire Volleyball Association (WEVA) is the Regional Volleyball Authority of USAV for western New York and is comprised of fifteen counties. WEVA's By-Laws Article III, Section 3.01(c) provides as follows:

> "The Board shall manage WEVA affairs....<u>Qualifications</u>: The Board shall be made up of the following members. Four (4) members shall be the elected Officers of WEVA: PRESIDENT, VICE PRESIDENT, TREASURER, and SECRETARY. The Officers shall be elected at large. One shall be elected at large from each special interest group: OFFICIALS REP, JUNIOR COORDINATOR, JUNIOR BOYS REP, JUNIOR GIRLS REP, BEACH REP, and ADULT REP....In addition to the qualifications listed previously, candidates for the following Board positions shall meet the following requirements: <u>Officials Rep</u>: The nominee must be a certified USA Volleyball official who has been so certified for the preceding 24 months prior to election; they will represent the officials of WEVA at all Regional meetings (and National meetings as necessary)."

Further requirements for the Board Officials state that the Junior Coordinator, Junior Boys Rep, Junior Girls Rep, Beach Rep, and Adult Rep must all be actively involved with USA Volleyball programs. (Attached hereto as Exhibit "5" is a true and correct copy of WEVA's By-Laws). Iroquois-Empire Volleyball Association Inc. (IREVA) is the Regional Volleyball Authority of USAV for the upstate eastern New York State territory that encompasses thirty-six individual counties, including Onondoga County where this suit was originally brought. USAV has purposefully derived substantial commercial benefit from its affiliations in the forum through these regional associations and the clubs which they encompass. In fact, there are 154 "USA Volleyball Clubs" in New York State, all of which provide USAV with *significant annual* revenue. (See Exhibit "3"). Both players and club operators pay regional association registration fees and USAV takes a percentage of those payments. Not only this, but all facilities used and operated by these clubs are considered USAV facilities for insurance purposes. When a club operator signs up to become part of USAV through one of the subregions (GEVA, IREVA, or WEVA), they must list their practice facility and it becomes an insurance reciprocate of USAV. As such, it is a USAV facility *even if* USAV does not own it, or if the club operator does not own it. Furthermore, USAV hosts national volleyball tournaments in New York in which they receive further substantial revenue.

Through these foregoing activities, USAV is amenable to suit in New York courts under CPLR §301 by, "engag[ing] in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990). As the New York Court of Appeals in Landoil Resources Corp. instructed, "the test for 'doing business' is a simple and pragmatic one." Id. (citing Bryant v. Finnish Nat. Airline, 15 N.Y.2d 426, 432 (1965) (citations and internal quotation marks omitted). This simple and pragmatic test ascertains whether, "the corporation is 'present' in the State not occasionally or casually, but with a fair measure of permanence and continuity." Id. (citing Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267 (1917) (citations and internal quotation marks omitted). That test is satisfied by the evidence in the record, as the activities carried out on behalf of Defendant in the State of New York are neither sporadic nor casual. Yet USAV claims that it is "essentially at home" in only one place, Colorado, its principal place of business. "For this reason alone," USAV claims, it is not subject to general jurisdiction in the State of New York. This assumption is mistaken however, and not in line with Supreme Court precedent, as "Goodyear did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." Daimler A.G. v. Bauman, 517 U.S. 117, 137 (2014). Even following Defendant's line of reasoning, USAV would still subject to general jurisdiction in the State of California as well, where it is also incorporated. USAV has been sued in multiple jurisdictions, including, but not limited to Illinois, Indiana, California, and Tennessee (See Butler v. U.S.A. Volleyball, 673 N.E.2d 1063 (1996); Bell, Ph.D. v. Ball, et al., Case No.: 2:2011-cv-06851 (2011); DFA PVA II Partners LLC v. IMG Worldwide Inc., et al., Case No.: 1:2018-cv-00156 (2018); Mixon v. Memphis Volleyball Academy, Inc., et al., Case No.: 2:2014-cv-02166

(2014)). However, Defendant's Motion to Dismiss maintains that they are only "at home" in Colorado. Therefore, USAV's claims that it does not conduct any business activities in New York and can *only* be subjected to general jurisdiction in the State of Colorado are blatantly false.

### B. The Complaint Alleges Sufficient Facts to Support Specific Jurisdiction

Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2nd Cir. 2010). New York has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957). Moreover, as USAV purposefully derives benefit from its interstate activities, it would be unjust to allow them to "escape having to account in other States for consequences that arise proximately from such activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Tortious acts comprising the sexual abuse in this case occurred in Syracuse, New York, which allows for this Court to exercise specific jurisdiction over this cause of action.

#### 1. There is Specific Jurisdiction Under New York's Long-Arm Statute

Specific Jurisdiction exists under New York's long-arm statute, CPLR §302(a). While only *one* subsection of CPLR §302(a) must be satisfied in order to confer specific jurisdiction, *four* subsections of the rule are satisfied with USAV's contacts with the State of New York. Specifically, the prima facie elements of CPLR §302(a)(1), CPLR §302(a)(2), CPLR §302(a)(3)(i), and CPLR §302(a)(4) are all satisfied by Defendant's tortious conduct, which allows for this case to be properly heard by this Court.

Under CPLR §302(a)(1), there is specific jurisdiction over a non-domiciliary who transacts business within the state or contracts anywhere to supply goods or services in New York. While

there must be some nexus between the business activity and the cause of action to satisfy §302(a)(1), the "standard does not require a causal link between the defendant's New York business activity and a plaintiff's injury but instead merely requires a relatedness such that the claim is not 'completely unmoored' from the business activity." LaChapelle v. Torres, 1 F.Supp.3d 163, 177 (S.D.N.Y. 2014). USAV undoubtedly conducts extensive business activities in the State of New York, namely as the national governing body for volleyball and as set forth above through its regional governing bodies. Rick Butler, as a volleyball coach for USAV's predecessor, committed acts of sexual misconduct while acting within the scope of his employment while in Syracuse, New York in 1981. Therefore, the "relatedness" component needed to establish specific jurisdiction under CPLR §302(a)(1) is satisfied.

Under CPLR §302(a)(2), there is specific jurisdiction over a non-domiciliary who commits a tortious act within New York. "If a tort is committed by a person who is physically present in New York but who is acting as an agent of or co-conspirator with an out-of-state individual, courts may attribute the in-state acts to an out-of-state defendant for the purposes of obtaining personal jurisdiction under New York's long-arm statute." LaChapelle v. Torres, 1 F.Supp.3d 163 (S.D.N.Y. 2014). Defendant maintains that there is no specific jurisdiction under §302(a)(2) as the sexual assaults occurred while Rick Butler was an employee of Sports Performance Volleyball Club in July 1981, not USAV. However, at the time of the sexual abuse, the national governing body of volleyball in the United States was the United States Volleyball Association. The United States Volleyball Association (USVBA, later to be renamed USA Volleyball) was founded in 1928 in New York City for the purpose of representing the sport nationally and internationally and for conducting an annual national championship. (See Exhibit "1"). The United States Volleyball Association is now USAV. There was no merger, just a change of name. Therefore, Defendant's

assertion that Rick Butler was only an employee of Sports Performance Volleyball Club, "possibly" the United States Volleyball Association, but *not* USAV is unsupported by both facts and law. At best for movant, more discovery is needed on Rick Butler's employment status in 1981. *Even* if there were truth to Defendant's argument that the tortious conduct occurred before a "merger" of USAV and the United States Volleyball Association, the argument still fails; a merger does not indemnify USAV from liability. By merging with United States Volleyball Association, USAV would have assumed all claims and debts of the United States Volleyball Association. The reasoning behind the "merger exception" to the general rule that the purchaser of corporate assets does not succeed to the seller's tort liabilities is, "the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities in order "to ensure that a source remains to pay for the victim's injuries." Klumpp v. Bandit Industries, Inc., 113 F.Supp.2d 567, 573 (W.D.N.Y. 2000).

Furthermore, Defendant's argument that the sexual misconduct occurred outside the scope of Rick Butler's employment is moot. The complaint does not charge that USAV is vicariously liable for the acts of Rick Butler. Rather, USAV is liable *itself* for the negligent hiring, retention, and supervision of Rick Butler. Furthermore, USAV put Rick Butler in his position of power which enabled him to commit the sexual abuse suffered by Plaintiff. "In instances where, as here, an employer cannot be held vicariously liable for its employee's torts because they occur outside the scope of his employment, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision." Bouchard v. New York Archdiocese, 719 F.Supp.2d 255, 260 (S.D.N.Y. 2010) (citing Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 161 (2d Dep't 1997)) (citations and internal quotation marks omitted). This is directly in line with the prima facie elements of Plaintiff's causes of action pertaining to defendant,

USAV. Under New York law, a claim for negligent hiring, supervision, or retention requires "a plaintiff to show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004). Under these causes of action, USAV is not liable for Rick Butler's conduct, but rather, USAV - the body which oversees the sport of volleyball nationwide - is liable for continuing to allow Rick Butler to coach despite the knowledge that he was well-known as a sexual predator.

In addition, under CPLR §302(a)(3)(i), there is specific jurisdiction over a non-domiciliary for a tortious act committed outside New York so long as the non-domiciliary regularly does or solicits business, engages in any other persistent source of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). For the reasons aforementioned, USAV derives substantial revenue from its three regional associations and 154 USA Volleyball Clubs that operate within the State. This revenue is derived from continuous and systematic business conducted through these clubs and associations.

Further, under CPLR §302(a)(4), there is specific jurisdiction over a non-domiciliary who owns, *uses*, or possesses any real property situated within New York. Defendant's Motion to Dismiss states that USAV does not own or lease real property in New York, nor maintain personal property in the forum. However, USAV most certainly uses real property situated within New

York in furtherance of its business enterprise. As aforementioned, each and every practice facility utilized by USAV Regional Volleyball Associations and USA Volleyball Clubs is an insurance reciprocate of USAV. So, while *semantically* USAV does not own or lease real property within the State of New York, for purposes of CPLR §302(a)(4) there are many practice facilities used by USAV in furtherance of its business and for insurance purposes. Again, only one of the four above grounds is necessary to establish jurisdiction and here, each of the four warrant keeping this action in New York where the abuse occurred.

### C. Exercising Jurisdiction over USAV Comports with Due Process

This Court's exercise of general or specific jurisdiction does not violate constitutional strictures. The due process test for personal jurisdiction consists of two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2nd Cir. 1996). USAV most certainly meets the requisite "minimum contacts" inquiry for New York to sustain personal jurisdiction under the Due Process Clause of the United States Constitution. See Int'l Shoe Co v. Washington, 326 U.S. 310, (1945) (establishing that due process is not offended so long the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice"). The activities carried out on behalf of Defendant in the State of New York are neither sporadic nor casual. As aforementioned, USAV has three Regional Volleyball Authorities conducting business in the State of New York which oversee 154 USA Volleyball Clubs. USAV, through these regional programs - the self-proclaimed "backbone of USA volleyball" - exercises the privilege of conducting activities within the State of New York. The exercise of that privilege gives rise to obligations, "[and] a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to

be undue." Int'l Shoe Co., 326 U.S. at 319. As long held by New York courts, "so long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State" Fischbarg v. Doucet, 9 N.Y.3d 375, 384-85 (N.Y. App. Div. 2007) (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 640 (N.Y. App. Div. 1988); see also Burger King Corp., 471 U.S. at 475-76 (1985) (holding that when "the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well").

While it is true that "absent allegations that the defendant had actively sought to encourage New Yorkers to access its site, or that it conducted business in New York, defendant [has] insufficient contacts with the forum to satisfy due process," that is not the circumstance of the present case. A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines, 828 F.Supp.2d 557, 574 (E.D.N.Y. 2011). Through the use of its website, USAV actively seeks to encourage New Yorkers to find their "local connection to USA Volleyball," and through those "local connections," derives substantial annual revenue. Therefore, not only does USAV procure substantial business from New York, but it actively promotes its 154 USA Volleyball Clubs within the forum. As such, USAV's contacts with the forum are far from the requisite minimum. See Id. at 568 (noting that "the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry"); see also Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987) (holding that "when minimum contacts have been established, often the

interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant").

USAV most certainly meets the requisite "reasonableness" inquiry as well. In determining if New York is a reasonable forum, this Court must apply the five-factor Asahi test to determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." See Asahi Metal Industry Co., 480 U.S. at 105. Under Asahi, a court must evaluate: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Id. at 107.

The burden imposed on USAV in defending itself in New York is minimal. "[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." Burger King Corp., 471 U.S. at 474 (citing McGee, 355 U.S. 220). Furthermore, as aforementioned, New York has a "manifest interest" in providing Plaintiff with a convenient forum for redressing injuries inflicted by USAV in the State of New York as an out-of-state actor, as demonstrated by the recent passage of the Child Victims Act. New York State recently expanded the statute of limitations for victims of child sex abuse because it has such a significant interest in giving survivors their day in Court. It is not so these cases can then be transferred to another jurisdiction. Furthermore, New York is the most convenient forum for Plaintiff to obtain relief from the tortious conduct she suffered at the hands of Rick Butler.

## CONCLUSIONS

In short, well settled case law demonstrates that:

1. The Court has general personal jurisdiction over USAV;

2. The Court has specific personal jurisdiction over USAV; and

3. Jurisdiction here is permissible under the Due Process Clause.

As such, this Court should deny USAV's motion in full, and the Complaint against USAV in the United States District Court for the Northern District of New York should not be dismissed.

Dated: New York, New York  
January 21, 2020

Respectfully submitted,  
MERSON LAW, PLLC

By: *[signature: Jordan Merson]*

Jordan K. Merson (JM-7939)  
150 East 58th Street, 34th Floor  
New York, NY 10155  
Telephone: (212) 603-9100  
Facsimile: (347) 441-4171  
jmerson@mersonlaw.com  
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

SARAH POWERS-BARNHARD,

                        *Plaintiff*,

-against-

RICK BUTLER, CHERYL BUTLER, GLV, INC.
d/b/a SPORTS PERFORMANCE VOLLEYBALL
CLUB and GREAT LAKES CENTER, and
U.S.A. VOLLEYBALL,

                        *Defendants.*

-----------------------------------------------------------------X

Docket No.: 5:19-CV-1208

**CERTIFICATE OF SERVICE**

I, Jordan K. Merson, Esq., do hereby certify that on January 21, 2020, I electronically filed a Memorandum of Law with five Exhibits with the Clerk of the District Court using the CM/ECF system, which sent notification to all counsel of record.

Dated: New York, New York
         January 21, 2020

Respectfully submitted,
MERSON LAW, PLLC

By: _____/s/ Jordan Merson_____
Jordan K. Merson (JM-7939)
150 East 58th Street, 34th Floor
New York, NY 10155
Telephone: (212) 603-9100
Facsimile: (347) 441-4171
jmerson@mersonlaw.com
Counsel for Plaintiffs