**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SARAH POWERS-BARNHARD,

                                    Plaintiff,                    5:19-cv-01208 (BKS/ATB)

v.

RICK BUTLER, CHERYL BUTLER, GLV, INC. d/b/a
SPORTS PERFORMANCE VOLLEYBALL CLUB and
GREAT LAKES CENTER, and U.S.A. VOLLEYBALL,

                                    Defendants.

**Appearances:**

*For Plaintiff:*
Merson Law, PLLC
Jordan K. Merson
150 East 58th Street, 34th Floor
New York, NY 10155

*For Defendant USA Volleyball:*
Lorraine Rann Mertell
Dean J. DiPilato
Stephen T. Helmer
Mackenzie Hughes LLP
440 South Warren Street
Syracuse, NY 13202

*For Defendants GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center,*
*Rick Butler, and Cheryl Butler*
Danielle D'Ambrose
D'Ambrose P.C.
500 North Michigan Avenue, Suite 600
Chicago, IL 60611

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Sarah Powers-Barnhard filed a Complaint in New York Supreme Court, Onondaga County against Defendants Rick Butler; Cheryl Butler; GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center ("GLV" or the "Volleyball Club"); and USA Volleyball alleging: (1) negligence; (2) negligent infliction of emotional distress; (3) negligent hiring, retention, and supervision; (4) assault; and (5) battery. (Dkt. No. 2). On September 27, 2019, Defendant USA Volleyball removed the action under 28 U.S.C. § 1446 to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1). Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Dkt. Nos. 23, 31). In addition, Defendants Rick Butler, Cheryl Butler, and GLV (collectively, the "Illinois Defendants") move to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue. (Dkt. No. 31). Plaintiff has filed responsive briefing.[1] (Dkt. Nos. 27, 32). For the reasons that follow, USAV's motion is granted, and the Illinois Defendants' motions are granted in part.

## II.     FACTS[2]

### A.      Defendant Rick Butler's Conduct Against Plaintiff

Plaintiff Sarah Powers-Barnhard, a Florida resident, was a "rising top-ranked high school volleyball player" at the Sports Performance Volleyball Club. (Dkt. No. 2, ¶ 1). Plaintiff "was

---

[1] The parties have submitted supplemental briefing in response to the Court's July 28, 2020 text orders. (Dkt. Nos. 35–40).

[2] The facts are drawn from the Complaint and the parties' evidence submitted in support of the motions to dismiss. With respect to both motions to dismiss—for lack of personal jurisdiction and improper venue—the Court construes the pleadings and evidence "in the light most favorable" to the plaintiff and resolves "all doubts" in the plaintiff's

2

subjected to sexual, emotional, and physical abuse" beginning in 1981 by her volleyball coach, Defendant Rick Butler. (Dkt. No. 2, ¶¶ 1, 16). Mr. Butler is "a volleyball coach who renders services throughout the United States," including in New York. (*Id.* ¶ 31). Mr. Butler "was an owner and instructor" at the Volleyball Club, which "was a domestic corporation duly organized and existing under" the laws of the State of Illinois.[3] (*Id.* ¶¶ 2, 33, 36). Mr. Butler was also "an agent, servant and/or employee of" USAV. (*Id.* ¶ 13).

It was "known among the volleyball community and the girls at the volleyball club that Mr. Butler was a sexual predator." (*Id.* ¶ 2). "Despite Mr. Butler's reputation as a sexual predator to young girls, he continued to be a volleyball coach under the supervision and control of" the Club and USAV. (*Id.* ¶ 3). Mr. Butler had "previously committed sexual attacks." (*Id.* ¶ 57).

Mr. Butler "started to initiate inappropriate behavior" toward Plaintiff on her 16th birthday, when he took Plaintiff "to a back stairwell and hugged her." (*Id.* ¶ 16). In July 1981, Plaintiff's Volleyball Club team "took a trip to Michigan, Syracuse, New York, and Canada."[4] (*Id.* ¶ 17). On that trip, at a volleyball practice, Mr. Butler threw a volleyball past Plaintiff's head and later forced her to "sit alone in the equipment bus" on the way to the dorm building while he took the rest of the team to get ice cream. (*Id.*).

During this trip, "Plaintiff and her teammates were staying in an empty summer dorm building in Syracuse" when Mr. Butler asked Plaintiff "to see him in an upstairs private lounge

---

favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

[3] The Complaint states that "[a]t all times here mentioned," GLV was a not-for-profit corporation incorporated in Illinois, (Dkt. No. 2, ¶ 8). Mr. Butler has submitted a declaration stating that the Sports Performance Volleyball Club was created in 1982 and that GLV was not created until he and Ms. Butler formed the corporation in 1990. (Dkt. No. 31-3, ¶¶ 9, 11, 14).

[4] Mr. Butler's declaration states that he has never coached a Sports Performance Volleyball Club team in any type of competition in New York State. (Dkt. No. 31-3, ¶ 17).

in the dorm building." (*Id.* ¶ 18). He told Plaintiff that "she needed to understand that to achieve all of her . . . goals and dreams of becoming a professional volleyball player, she needed to follow him blindly and do as he said." (*Id.*). Mr. Butler then "forcibly attacked" Plaintiff "by groping her and trying to force himself onto her by kissing her." (*Id.* ¶¶ 38, 5, 18). This was the "beginning of the inappropriate sexual contact" between Mr. Butler and Plaintiff, which "only escalated from there." (*Id.* ¶ 18). During that same trip, while in Canada, Mr. Butler "plied the entire team, including [P]laintiff, with alcohol." (*Id.* ¶ 19). The team "became extremely intoxicated." (*Id.*). "Throughout this entire trip," Mr. Butler "kissed and fondled" Plaintiff. (*Id.*).

When the team returned home, Mr. Butler invited the team members to his house and again "got them extremely intoxicated." (*Id.* ¶ 20). Later that evening, Mr. Butler took Plaintiff's "head into his lap and stroked her hair while another player watched." (*Id.*). Days later, Mr. Butler's "conduct escalated" when he took Plaintiff "to his house and proceeded to rape her." (*Id.* ¶ 21). This was the first of multiple rapes Mr. Butler committed against Plaintiff. (*Id.*).

During a subsequent trip to Germany, Mr. Butler raped Plaintiff in a train car bathroom while her entire team was nearby. (*Id.* ¶ 22). Due to an "issue with their sleeping arrangements," Mr. Butler and "the entire team" were "forced to sleep on the floor in one large room." (*Id.*). Mr. Butler slept next to Plaintiff and "fondled her throughout the night, just feet away from the other girls" on the team. (*Id.*).

On several occasions, Mr. Butler "forced [Plaintiff] to watch pornographic movies so she could 'learn.'" (*Id.* ¶ 23). Mr. Butler used "intimidation tactics and the pretext of talking or meeting about 'team issues' to lure" Plaintiff to his "house, car, and/or other secluded locations to sexually abuse" her. (*Id.* ¶ 24). Mr. Butler would punish Plaintiff during practice if she did something to upset him. (*Id.* ¶ 25).

Mr. Butler "continued to harass and sexually abuse" Plaintiff when she graduated from high school and went on to school at a university. (*Id.* ¶ 26). Defendant Cheryl Butler has "repeatedly attacked" Plaintiff on social media. (*Id.* ¶ 28). The Butlers have "directed younger players to reach out" to Plaintiff "to tell her to stop telling her story." (*Id.*). As a result of Mr. Butler's "malicious, predatory, and intentional acts," Plaintiff has suffered "catastrophic and lifelong injuries." (*Id.* ¶ 27). Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.* at 14).

### B.    Defendant USA Volleyball and the Regional Volleyball Associations

According to a webpage submitted by Plaintiff, the United States Volleyball Association (the "Association"), USAV's predecessor entity, was founded in 1928 at the Yale Club in New York City, (Dkt. No. 27-2, at 2). The Association "was created for the purpose of representing the sport nationally and internationally, and for conducting an annual national open championship" and "has fulfilled this purpose ever since." (*Id.*). The Association incorporated in California in 1970, where it maintained its principal place of business. (Dkt. No. 23-3, at 5). In 1981, when the acts giving rise to Plaintiff's Complaint allegedly occurred, the Association was the national governing body for volleyball in the United States. (Dkt. No. 23-3, at 1–2). In or around 2010, the Association and USAV merged. (Dkt. No. 23-1, at 7–10). USAV is a nonprofit corporation with its principal place of business and place of incorporation in the state of Colorado. (Dkt. No. 23-3, at 1). According to an affidavit submitted by Kerry Klostermann, USAV's Secretary General, USAV is the national governing body for volleyball in the United States. (*Id.*; Dkt. No. 30-8, ¶ 5). The USAV webpage states that it conducts national championships and USA Volleyball Junior Olympic Volleyball Championships. (Dkt. No. 27-2, at 2).

There are various regional volleyball associations around the country. (Dkt. No. 27-3, at 2; Dkt. No. 30-8, ¶¶ 2–3). According to Klostermann, these regional volleyball associations "are independent not-for-profit corporations formed pursuant to the laws of the state(s) in which they are incorporated." (*Id.* ¶ 3). The regional volleyball associations "have their own system of governance" and are formed by individuals "interested in forming a local organization that will foster the sport of amateur volleyball." (*Id.*). USAV does not "form or incorporate these entities and they are not subsidiaries of USAV." (*Id.* ¶ 2). Subsequent to incorporation, a regional association "may elect to seek affiliation with USAV," but "[n]ot all volleyball organizations become affiliated with USAV." (*Id.* ¶ 4).

Additional webpages submitted with Plaintiff's response brief, describe the regional volleyball associations as "the backbone of USA Volleyball," (Dkt. No. 27-3, at 2), and state that each of the regional volleyball associations is "a Member Organization of USA Volleyball." (Dkt. No. 27-4, at 2). The webpages describe the regional associations' "grassroots efforts to grow the game and serve as a catalyst for USA Volleyball functions" and state that "[e]ach [regional association] is overseen by a commissioner or executive director." (Dkt. No. 27-3, at 2). Plaintiff asserts that the Iroquois-Empire Volleyball Association is the regional volleyball association for Onondaga County, where this suit was brought, and has included a page from that association's website.[5] (Dkt. No. 27-4, at 2; Dkt. No. 27, at 5).

According to Klostermann, "not every volleyball player, team, coach and/or event in the United States is associated or affiliated with USAV or [a] regional volleyball association." (Dkt. No. 30-8, ¶ 5). Klostermann states that neither the 1981 volleyball trip at issue here, nor the

---

[5] Plaintiff also submitted undated Western Empire Volleyball Association's bylaws, which state that that organization acts as "the official representative of USA Volleyball within an area designated as Western New York." (Dkt. No. 27-6, at 4).

events in which Plaintiff participated on that trip, "were in any way associated with USAV or the Association." (Dkt. No. 23-3, ¶ 6). In his affidavit Klostermann stated that neither USAV nor the Association had an office or place of business in New York; neither were registered to do business in New York, had appointed a registered agent in New York, owned or leased property in New York, or had personal property or employees in New York. (Dkt. No. 23-3, ¶¶ 11–12). Klostermann did not address revenues obtained by USAV from New York State.

## III.   DISCUSSION

### A.   Personal Jurisdiction

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). When the issue of personal jurisdiction is decided "on the pleadings and without discovery, the plaintiff need show only a prima facie case." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). A prima facie showing "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration in original) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

In reviewing a Rule 12(b)(2) motion, the Court "may refer to evidence outside the pleadings." *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019). Courts must "construe the pleadings and affidavits in the light most favorable" to the plaintiff and resolve "all doubts" in the plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's allegations must provide "factual specificity necessary to confer jurisdiction." *Jazini ex rel. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Conclusory statements,

including legal conclusions, without supporting facts are insufficient. *Id.* A court may order limited discovery on the issue of jurisdiction, but a court does not err in denying jurisdictional discovery where the plaintiff has failed to make a prima facie case of personal jurisdiction. *Id.* at 186. In diversity cases, "personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York." *DiStefano*, 286 F.3d at 84 (citing *Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 120). To "exercise personal jurisdiction over a defendant, a district court must possess a statutory basis for doing so." *Troma*, 729 F.3d at 218. In addition, the exercise of personal jurisdiction must accord with constitutional due process. *See Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015). A "court may exercise two types of personal jurisdiction over a corporate defendant properly served with process": "general" and "specific." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

### 1.    USA Volleyball

#### a.    General Jurisdiction

Defendant USAV argues that Plaintiff fails to satisfy the requirements for personal jurisdiction under New York law or due process. (Dkt. No. 23-2, at 6–8; Dkt. No. 30-7, at 6–8). Plaintiff responds that that USAV "is *so* heavily engaged in activity in New York"—through its regional volleyball association and clubs within the state—"that general jurisdiction is easily conferred." (Dkt. No. 27, at 3; *id*. at 3–6). The Court disagrees with Plaintiff.

General jurisdiction subjects a defendant to suit on any claims, whether or not they arise from the defendant's dealings in the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). "For a court to exercise general jurisdiction over a defendant," (1) "state law must authorize general jurisdiction"; and (2) "jurisdiction 'must comport with constitutional due process principles.'" *Reich v. Lopez*, 858 F.3d 55, 62–63 (2d Cir. 2017) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). In *Daimler AG v.*

*Bauman*, the Supreme Court explained that "[a]side from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014)).

Here, Plaintiff fails to make a prima facie showing of general jurisdiction over USAV because her argument fails to show that USAV is "essentially at home" in New York State, "as the federal Constitution requires." *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 140–41 (S.D.N.Y. 2018). It is undisputed that USAV is a corporation with its principal place of business and place of incorporation in Colorado.[6] (Dkt. No. 2, ¶¶ 10–11; Dkt. No. 23-3, at 1).

Further, Plaintiff has failed to establish that this is an exceptional case. "[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Brown*, 814 F.3d at 629. In *Brown*, for instance, the Second Circuit concluded that the defendant, Lockheed Martin's contacts with Connecticut were insufficient to qualify as an exceptional case. *Id.* There, Lockheed had "obtained a formal certificate to do business" in Connecticut. *Id.* at 628. And while Lockheed did not own property in Connecticut, it had "leased the same building" for years, "r[a]n operations at three other leased locations in the jurisdiction from 2008 through 2012" and "employed between approximately 30 and 70 workers" in Connecticut during that period while generating "about $160 million in revenue for

---

[6] Even assuming the Association, which as explained above merged with USAV in or around 2010, were the relevant corporation for the general jurisdiction inquiry, that argument would also fail to confer general jurisdiction in New York, as the Association's principal place of business and place of incorporation prior to the merger were in California. (Dkt. No. 23-3, 1–2, 5).

its Connecticut-based work" and paid in-state taxes on that revenue. *Id.* These figures

"represented a small part of [Lockheed's] portfolio," representing "0.05% of Lockheed's full

workforce" and "0.107% of the company's total annual revenue." *Id.* at 629 (explaining that "the

general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state

contacts,' but 'calls for an appraisal of a corporation's activities in their entirety, nationwide and

worldwide.'" (quoting *Daimler*, 571 U.S. at 139 n.20)).

      Plaintiff's argument—that the regional volleyball associations establish that USAV is

essentially at home in New York—is unavailing. Klostermann's affidavits explain that "USAV

does not form or incorporate" the regional volleyball associations and that "these entities are not

subsidiaries of USAV." (Dkt. No. 30-8, ¶ 2). In addition, Klostermann explains that these

regional entities "are independent not-for-profit corporations formed pursuant to the laws of the

state(s) in which they are incorporated." (*Id.* ¶ 3). These standalone regional associations are

insufficient to establish the "exceptional case." Accordingly, USAV's contacts with New York

State "fall far short of the relationship that due process requires" under Supreme Court and

Second Circuit precedent "to permit the exercise of general jurisdiction" in New York. *See*

*Brown*, 814 F.3d at 630.

      Plaintiff also argues that *Daimler*, as well as the Supreme Court's decision in *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011), do not stand for the

proposition that a corporation is subject to general jurisdiction only where it is incorporated and

has its principal place of business—those places, Plaintiff maintains, are only "paradigm"

forums. (Dkt. No. 27, at 6). That assertion, however, is foreclosed by the Circuit's decision in

*Brown* in which the court joined three of its sibling circuits in rejecting that argument. 814 F.3d

at 627–29.[7] Accordingly, the Court finds that it lacks general jurisdiction over USAV. As Plaintiff fails to satisfy *Daimler*'s requirements of due process under the general jurisdiction analysis, the Court does not "address the scope of general jurisdiction under New York law." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014).

### b.        Specific Jurisdiction

To establish specific jurisdiction, there must be an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation marks and alteration omitted); *accord Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation.") (internal quotation marks omitted).

To determine whether the Court has specific jurisdiction over Defendants, the Court first applies New York's long-arm statute, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010), which provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> >
> > 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> >
> > 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of

---

[7] Plaintiff also notes that "USAV has been sued multiple jurisdictions," including "Illinois, Indiana, California, and Tennessee" and that therefore the claim that USAV "can *only* be subjected to general jurisdiction" in Colorado is "blatantly false." (Dkt. No. 27, at 6–7). Plaintiff, however, does not explain the grounds for general jurisdiction in those lawsuits or how those lawsuits support her argument that USAV could be subject to general jurisdiction in New York in this case. Accordingly, the Court does not consider this argument further.

action for defamation of character arising from the act, if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> . . .

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). Plaintiff argues that USAV's alleged "tortious conduct" satisfies four of 302(a)'s subsections: 302(a)(1), (a)(2), (a)(3)(i), and (a)(4). Plaintiff also clarifies that the Complaint "does not charge that USAV is vicariously liable" for Mr. Butler's alleged acts, but rather, that USAV is liable for negligently hiring, retaining, and supervising him. (Dkt. No. 27, at 7, 9). The Court analyzes each of Plaintiff's asserted statutory bases for jurisdiction in turn.

### i.    N.Y. C.P.L.R. Section 302(a)(1)

USAV argues that Plaintiff has not established a prima facie case under section 302(a)(1) because Mr. Butler was "not an employee or agent of USAV, and the volleyball competitions Rick Butler and Plaintiff attended were not owned or operated by USAV (nor does the Complaint allege that it was)." (Dkt. No. 23-2, at 10). Plaintiff argues that Mr. Butler, as the "volleyball coach for USAV's predecessor, committed acts of sexual misconduct while acting within the scope of his employment while in Syracuse, New York in 1981."[8] (Dkt. No. 27, at 8; Dkt. No. 2, ¶¶ 17–18).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*

---

[8] Plaintiff alleges—and the Court credits—that Mr. Butler was an "agent, servant, and/or employee" of USAV. (Dkt. No. 2, ¶ 13).

450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith,* 52 N.Y.2d 268, 273 (1981)). A

claim "'aris[es] from' a particular transaction when there is 'some articulable nexus between the

business transacted and the cause of action sued upon,'" *id.* (quoting *McGowan,* 52 N.Y.2d at

272), or when "there is a substantial relationship between the transaction and the claim asserted,"

*id.* (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (1988)). A "merely

coincidental" connection is "insufficient to support jurisdiction." *Id.* (quoting *Johnson v. Ward,* 4

N.Y.3d 516, 520 (2005)). "[T]he overriding criterion necessary to establish a transaction of

business is some act by which the defendant purposefully avails itself of the privilege of

conducting activities within New York," *Licci*, 673 F.3d at 61 (2d Cir. 2012) (quoting *Ehrenfeld

v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007)), *certified question accepted and answered sub nom.*

*Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012), thereby "invoking the benefits and

protections of its laws." *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)).

Plaintiff argues that the USAV "undoubtably conducts extensive business activities" in

New York "as the national governing body for volleyball" and "through its regional governing

bodies." (Dkt. No. 27, at 8). In her opposition to the motion to dismiss, Plaintiff asserts that

USAV gets a percentage of the regional association registration fees, a claim which appears to be

supported by the Form 990 return filed by the Garden Empire Volleyball Association. (*See* Dkt.

No. 27-5, at 11). Plaintiff also asserts, without citation to the Complaint or evidence in the

record, that facilities used by the regional clubs were considered USAV facilities for insurance

purposes; and that USAV "hosts national volleyball tournaments in New York" from which

"they receive further substantial revenue."  (Dkt. No. 27; *see also* Dkt. No. 38, at 4). USAV did

not respond to any of these assertions in its reply memoranda or affidavit.

However, assuming that Plaintiff satisfied the first—"transacts any business"—prong, there is not personal jurisdiction under 302(a)(1) because Plaintiff fails to satisfy the second prong: her causes of action did not arise from USAV's transaction of business in New York. The Complaint alleges that during Plaintiff's "time with Sports Performance Volleyball Club," her team "took a trip to Michigan, Syracuse, New York, and Canada"; the Complaint does not allege any involvement by USAV or any connection that USAV had to that Volleyball Club. (Dkt. No. 2, ¶ 17). There is no allegation or evidence that USAV sponsored or was in any way connected to any of the volleyball events in which Plaintiff participated during this trip. Thus, Plaintiff fails to establish "a substantial relationship between" any USAV business and "the claim asserted," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)); *accord Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)), and fails to establish a prima facie case for specific jurisdiction under section 302(a)(1).

### ii.    N.Y. C.P.L.R. Section 302(a)(2)

Plaintiff argues that she has established a prima facie case under section 302(a)(2) because USAV was negligent in its hiring, supervision, and retention of Mr. Butler while he was employed by USAV. (Dkt. No. 27, at 8–9). In its reply brief, USAV maintains that Plaintiff fails to establish "any connection to USAV" or its predecessor entity. (Dkt. No. 30-7, at 14).

Section 302(a)(2) "requires the assertion of a colorable cause of action for a tortious act." *Modern Indus. Firebrick Corp. v. Shenango Inc.*, No. 11-cv-959, 2012 WL 2405236, at *6, 2012 U.S. Dist. LEXIS 87875, at *16 (W.D.N.Y. June 25, 2012). Plaintiff's theory of personal jurisdiction against USAV under section 302(a)(2) suffers from several infirmities. First, section 302(a)(2) "has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act." *Rescuecom Corp.*

*v. Hyams*, 477 F. Supp. 2d 522, 531 (N.D.N.Y. 2006); *see also Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28–29 (2d Cir. 1997). Here, Plaintiff has failed to establish that USAV performed any alleged tortious conduct while physically present in New York. *Id.* at 28 (explaining that section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when [it] performed the wrongful act"). To the extent Plaintiff relies on the theory that Mr. Butler was USAV's agent when he committed tortious actions against Plaintiff, this avenue is also unavailing. "For the purposes of personal jurisdiction, "an agent is a person or entity that acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." *Branham v. ISI Alarms, Inc.,* No. 12-cv-1012, 2013 WL 4710588, at *4, 2013 U.S. Dist. LEXIS 124933, at *12–13 (E.D.N.Y. Aug. 30, 2013) (citation and internal quotation marks omitted); *see also CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986); *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981). Here, crediting Plaintiff's allegation that Mr. Butler was an employee of USAV and that it was "known among the volleyball community . . . that Mr. Butler was a sexual predator," (*id.* ¶¶ 2, 4, 13), the Complaint does not plausibly allege that he acted for USAV's benefit, with USAV's consent, or that USAV exercised some control over Mr. Butler in the matter. Thus, Plaintiff's reliance on section 302(a)(2) as a basis for specific jurisdiction over USAV fails.

### iii.    N.Y. C.P.L.R. Section 302(a)(3)(i)

Plaintiff argues that jurisdiction is conferred under section 302(a)(3)(i), arguing that USAV "derives substantial revenues from its three regional associations and 154 USA Volleyball Clubs that operate within the State." (Dkt. No. 27, at 10). USAV argues that "there is no factual predicate for any assertion that USAV committed any tortious act . . . for which it

could be expected to answer in New York" and that Plaintiff has not alleged "that either [Mr.]

Butler or the 1981 trip had any connections to USAV." (Dkt. No. 30-7, at 15).

For § 302(a)(3)(i) to apply, "(1) a defendant must have committed a tortious act outside

New York, (2) the cause of action must arise from that tortious act, and (3) the act must have

caused injury to a person or property within New York." *Doe v. Delaware State Police*, 939 F.

Supp. 2d 313, 325–26 (S.D.N.Y. 2013). In addition, the plaintiff must "demonstrate one of 'four

alternative forms of ongoing New York activity by [the] defendant.'" *Id.* (quoting *Croskey v.*

*Med. & Tech. Servs., Inc.,* No. 05–cv–6641, 2006 WL 2347816, at *4, 2006 U.S. Dist. LEXIS

56466, at *14 (S.D.N.Y. Aug. 10, 2006) (alteration in original)).

"As a threshold matter, for jurisdiction pursuant to N.Y.C.P.L.R.§ 302(a)(3), the plaintiff

must allege facts: (1) stating a colorable cause of action in tort and (2) showing injury was

caused in New York." *Walden v. Lorcom Techs., Inc.*, No. 05-cv-3600, 2009 WL 799955 at *8,

2009 U.S. Dist. LEXIS 24458, at *28–29 (E.D.N.Y. March 24, 2009) (citation omitted); *see also*

*Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 106 (2d Cir. 2006)

(noting that "the plaintiff 'need not actually prove that defendant committed a tort but rather

need only state a colorable cause of action'" (quoting *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002))).

As Plaintiff notes, to establish a claim for negligent hiring, supervision, or retention under

New York law, in addition to the standard elements of negligence, a plaintiff must show: (1)

"that the tort-feasor and the defendant were in an employee-employer relationship"; (2) "that the

employer knew or should have known of the employee's propensity for the conduct which

caused the injury prior to the injury's occurrence"; and (3) "that the tort was committed on the

employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and internal quotation marks omitted).

Here, there is no indication from the Complaint or any of the evidence before the Court that the torts committed were done on USAV's premises or with its chattels. *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) (explaining that torts stemming from an employer's duty "to control the conduct of its employee even outside the scope of employment . . . [are] limited to torts committed by employees on the employer's premises or with the employer's chattels"). In her supplemental briefing, Plaintiff argues that "[a] claim for negligent hiring, retention and supervision is not limited to torts committed by employees on the employer's premises or with the employer's chattels." (Dkt. No. 38, at 1–2). The cases Plaintiff cites for this proposition, however, are inapposite. For instance, Plaintiff cites *Johansmeyer v. New York City Department of Education*, 165 A.D.3d 634, 636 (2d Dep't 2018). That case involved a claim that the New York City Department of Education ("DOE") negligently hired, retained, and supervised an after-school program employee. *Id.* at 635. There, the court explained that "[g]enerally, liability may not be imposed upon school authorities where all of the improper acts against a student occurred off school premises and outside school hours" but that the "defendants' submissions demonstrated that, although the sexual abuse ultimately occurred in the infant plaintiff's home, it was preceded by time periods when the infant plaintiff was alone with [a defendant] during school hours on a regular basis" and that "[d]uring these times, [this defendant] engaged in inappropriate behavior, including physical touching." *Id.* at 636. Accordingly, the court found "triable issues of fact" and affirmed the lower court's denial of "that branch" of the DOE's summary judgment motion. *Id.*

In another case Plaintiff cites, *Bell v. Board. of Education of the City of New York*, 90 N.Y.2d 944, 946 (1997), a Court of Appeals case, the court did not address the premises element at issue here, and reversed because it found that a "rational jury . . . could have determined . . . that the foreseeable result of the danger created by defendant's alleged lack of supervision was injury such as occurred here." *Id.* at 946–47.

Indeed, contrary to Plaintiff's contention, "the vast weight of authority establishes a premises element to negligent supervision and retention claims." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 684 (S.D.N.Y. 2014); *accord David v. Weinstein Co. LLC*, No. 18-cv-5414, 2019 WL 1864073, at *7–8, 2019 U.S. Dist. LEXIS 69917, at *19–22 (S.D.N.Y. Apr. 24, 2019) (dismissing claim of "negligent retention or supervision" where the plaintiff could not establish that her assault "'was committed on the employer's premises or with the employer's chattels'" (quoting *Ehrens*, 385 F.3d at 235)). Thus, Plaintiff's argument under section 302(a)(3)(i) fails.

### iv.    N.Y. C.P.L.R. Section 302(a)(4)

A "court may exercise jurisdiction over a defendant if he owns, uses, or possesses any property within New York that serves as the basis for plaintiffs' cause of action." *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019). Plaintiff argues that "while *semantically* USAV does not own or lease real property within the State of New York, for purposes of CPLR § 302(a)(4) there are many practice facilities used by USAV in furtherance of its business and for insurance purposes." (Dkt. No. 27, at 11). USAV replies that Plaintiff's argument falls short because section 302(a)(4) "requires a relationship between the property and the cause of action sued upon." (Dkt. No. 30-7, at 15) (citations omitted). The Court agrees with USAV.

Even assuming *arguendo* that the practice facilities Plaintiff describes constitute "use[]" under the statute, her argument fails. Section 302(a)(4) requires, as USAV notes, that Plaintiff

establish "a relationship between the property and the cause of action sued upon." *Stroud*, 91 F.

Supp. 3d at 390 (quoting *Lancaster v. Colonial Motor Freight Line, Inc.,* 177 A.D.2d 152, 159

(1st Dep't 1992)). Plaintiff's allegations as well as the evidence before the Court fail to show any

such relationship. *E.g.*, *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines,* 828 F. Supp. 2d

557, 574 (E.D.N.Y. 2011) (holding that plaintiff failed to establish jurisdiction over the

defendant under section 302(a)(4) where the plaintiff did not "allege any connection between

property in New York State and the claimed injury"). Accordingly, section 302(a)(4) does not

provide a basis to exercise jurisdiction over USAV. Because Plaintiff fails to establish either

general or specific personal jurisdiction over USAV, its motion to dismiss is granted.[9]

Furthermore, the Court denies Plaintiff's request to engage in jurisdictional discovery.

(Dkt. No. 27, at 9). *E.g.*, *Chaplin v. Kido Indus. Co.*, No. 10-cv-05711, 2011 WL 2421309, at *4,

2011 U.S. Dist. LEXIS 62099, at *11 (S.D.N.Y. June 7, 2011) (citing *Best Van Lines,* 490 F.3d

at 255 (finding the district court did not abuse its discretion in declining to permit jurisdictional

discovery "because the plaintiff had not made out a prima facie case for jurisdiction")); *Jazini*,

148 F.3d at 186 ("Since the [the plaintiffs] did not establish a prima facie case that the district

court had jurisdiction over [the defendant], the district court did not err in denying discovery on

that issue.").

### 2.    GLV

Plaintiff argues that the Court has jurisdiction over GLV under section 302(a)(2) because

it was negligent in hiring, supervising, and retaining Mr. Butler.[10] (Dkt. No. 32, at 6). The Illinois

---

[9] As Plaintiff fails to meet her burden to establish specific or general jurisdiction under New York law, the Court need not address whether exercising jurisdiction over USAV comports with due process under the Fourteenth Amendment. *E.g.*, *Chaplin v. Kido Indus. Co.*, No. 10-cv-05711, 2011 WL 2421309, at *4, 2011 U.S. Dist. LEXIS 62099, at *11 (S.D.N.Y. June 7, 2011).

[10] As with USAV, Plaintiff explicitly disclaims any respondeat superior claims against GLV. (Dkt. No. 32, at 6–7).

Defendants argue that the "'locus' of the tort alleged by Plaintiff lies in Illinois," not New York. (Dkt. No. 31-1, at 21–22).

Plaintiff's argument for personal jurisdiction over GLV fails for at least two reasons. First, there is no allegation that GLV, an Illinois corporation, was physically present in New York. *See Rescuecom Corp.,* 477 F. Supp. 2d at 531; *Bensusan,* 126 F.3d at 29 (citing *Feathers v. McLucas,* 15 N.Y.2d 443, 458 (1965)). Accordingly, none of the tort claims against GLV can serve as a basis for jurisdiction under section 302(a)(2). Second, section 302(a)(2) "requires the assertion of a colorable cause of action for a tortious act." *Modern Indus. Firebrick Corp. v. Shenango Inc.*, No. 11-cv-959, 2012 WL 2405236, at *6, 2012 U.S. Dist. LEXIS 87875, at *16 (W.D.N.Y. June 25, 2012) (first citing *Sole Resort,* 450 F.3d at 106, and then citing *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 519 (E.D.N.Y. 2011)). Here, as with USAV, there is no indication from the Complaint or any of the attached documents that the alleged torts were committed on GLV's premises or with its chattels.[11] *D'Amico*, 71 N.Y.2d at 88.

Third, to the extent Plaintiff intends to pursue a theory of jurisdiction premised on an agency relationship between Mr. Butler and GLV, her allegations are insufficient. "Whether a defendant's representative is an agent for purposes of § 302(a) hinges on whether the representative acted for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter." *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169–70 (S.D.N.Y. 2014). Although the Complaint alleges that it was "known

---

[11] In her supplemental briefing, Plaintiff's argues that she has alleged a colorable claim of negligent hiring, supervision, or retention because the Syracuse dormitory was "provided and/or arranged by [GLV] after transporting plaintiff to said dormitory in [GLV's] bus." (Dkt. No. 39, at 1). Assuming the Court could draw those factual inferences from the Complaint or the evidence before the Court, the assertion would nevertheless fall short. *See Canosa v. Ziff*, No. 18-cv-4115, 2019 WL 498865, at *16, 2019 U.S. Dist. LEXIS 13263, at *40 (S.D.N.Y. Jan. 28, 2019) ("Even assuming the hotel rooms in which the assaults on Canosa took place were paid for by TWC for use in connection with TWC projects, the third element of the tort of negligent supervision would not be satisfied.").

among the volleyball community . . . that Mr. Butler was a sexual predator," (Dkt. No. 2, ¶ 2; *id.*

¶ 4), it does not plausibly allege that he acted for the benefit of and with the consent of GLV or

that GLV exercised some control over the matter. Plaintiff's supplemental arguments do not

address how the Complaint or evidence before the Court establishes that Mr. Butler took the

alleged actions against Plaintiff with GLV's "knowledge and consent." *See Emerald Asset*

*Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (alterations in original)

(quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)); *see also Branham,* 2013

WL 4710588 at *4, 2013 U.S. Dist. LEXIS 124933, at *13*; Ramgoolie v. Ramgoolie*, No. 16-cv-

3345, 2016 WL 11281385, at *5, 2016 U.S. Dist. LEXIS 176912, at *14–15 (S.D.N.Y. Dec. 20,

2016) (finding that section 302(a)(2) could "not serve as a basis for personal jurisdiction" where,

inter alia, it was "not alleged that [the corporate defendants] exercised any control over [an

individual defendant] in committing his allegedly tortious acts" where the alleged torts were

committed for the individual defendant's own benefit), *report and recommendation adopted*,

2017 WL 564680, 2017 U.S. Dist. LEXIS 19932 (S.D.N.Y. Feb. 10, 2017). Accordingly, the

Court lacks personal jurisdiction over GLV and does not address whether the exercise of

personal jurisdiction would comport with due process.

### 3. Rick Butler

#### a. Specific Jurisdiction

Plaintiff argues that personal jurisdiction exists over Mr. Butler under section 302(a)(2)

because he "committed tortious acts" against Plaintiff in New York. (Dkt. No. 32, at 4). The

Illinois Defendants argue that personal jurisdiction is improper in New York because "Plaintiff's

cause of action does not arise from alleged acts taking place in New York" and that they instead

"flow directly from" Plaintiff's allegations "after returning to Illinois." (Dkt. No. 34, at 6–7).

Here, Plaintiff has alleged, at minimum, a colorable tort of battery against Mr. Butler that occurred while Mr. Butler was physically in New York. "Under New York law, battery is an 'intentional wrongful physical contact with another person without consent.'" *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)). The Complaint alleges that Mr. Butler asked Plaintiff "to see him in an upstairs private lounge in the dorm building" in Syracuse where the team was staying. Mr. Butler then allegedly told Plaintiff that she "needed to follow him blindly and do as he said" after which Mr. Butler "forcibly attacked" Plaintiff and "proceeded to kiss and grope" her. (Dkt. No. 2, ¶¶ 18, 38). Thus, Plaintiff has met her burden of establishing specific jurisdiction over Mr. Butler under section 302(a)(2).[12]

### b.   Due Process

Next, the Court must decide whether exercising personal jurisdiction over Mr. Butler comports with due process. "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co.,* 326 U.S. at 316).

This inquiry requires "a two-step analysis." *Id.* (citing *Metro. Life*, 84 F.3d at 567–68). First, the Court must decide whether Mr. Butler "has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* If Mr. Butler has "sufficient minimum contacts," the Court proceeds to the second step and considers "whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'" *Id.* (quoting *Metro.*

---

[12] The Illinois Defendants cite *McGowan v. Smith*, 52 N.Y.2d 268, 272–73 (1981) for the proposition that there must be "some articulable nexus between the business transacted and the cause of action sued upon." (Dkt. No. 34, at 7). The court there, however, analyzed section 302(a)(1), not (a)(2).

*Life*, 84 F.3d. at 568). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life*, 84 F.3d at 568 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### i.   Minimum Contacts

The Illinois Defendants do not squarely address the minimum contacts analysis with respect to Mr. Butler and instead focus on the reasonableness inquiry, which is addressed below; nevertheless, they argue generally that "the Illinois Defendants have no meaningful or relevant contacts with New York." (Dkt. No. 31-1, at 27). Plaintiff responds that Mr. Butler should have reasonably expected "to defend [the] actions that he committed within this forum." (Dkt. No. 32, at 10).

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden*, 571 U.S. at 284). These "same principles apply when intentional torts are involved." *Id.* (quoting *Walden*, 571 U.S. at 286). A single act can be sufficient to support jurisdiction "[s]o long as it creates a 'substantial connection' with the forum." *Burger King Corp.*, 471 U.S. at 476 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). That is particularly so where, as here, the single act is committed in the forum state. *Id.* at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there."); *see also In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 301 (E.D.N.Y. 2002) ("A single act by a defendant can be enough to confer personal jurisdiction if

that act gives rise to the claim being asserted." (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001))).

Here, Mr. Butler created the contacts with New York. As the team's coach, he and the rest of the volleyball team traveled to New York and stayed in facilities within the state, where he proceeded to "kiss and grope" Plaintiff, who was a minor at the time. (Dkt. No. 2, ¶¶ 2, 18, 37). *Giroux v. Foley*, No. 19-cv-00187, 2020 WL 1677073, at *2, 4, 2020 U.S. Dist. LEXIS 61151, at *5, 10 (D. Vt. Apr. 6, 2020) (finding that the minimum contacts requirement of due process was met where "the single act constituting [the defendant's] contact" with the forum state, which occurred "on one weekend trip thirty-five years ago," was "alleged to be an intentional tort with a minor victim that involved both planning and purposeful availment" of the state's facilities). Thus, accepting the facts alleged in the Complaint as true, Mr. Butler's "intentional conduct . . . create[d] the necessary contacts with the forum." *Walden*, 571 U.S. at 286. Accordingly, Plaintiff has satisfied the first prong of the due process analysis.

### ii.      Reasonableness

The Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Chloe*, 616 F.3d at 173 (alterations in original) (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987)). The Second Circuit has noted that "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life*, 84 F.3d at 575.

As to the first factor, the Illinois Defendants argue that they face a "considerable" burden by having to defend this case in New York when they (as well as witnesses and evidence) are located in Illinois. (Dkt. No. 31-1, at 24). Indeed, Mr. Butler may "be burdened by Plaintiff's choice of forum," as Mr. Butler is "located out of state." *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 15-cv-06478, 2016 WL 7451306, at *4, 2016 U.S. Dist. LEXIS 178796, at *11 (S.D.N.Y. Dec. 27, 2016). Nevertheless, the Court finds this factor provides Mr. Butler with "only weak support" because of "'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129–30 (2d Cir. 2002) (quoting *Metro. Life*, 84 F.3d at 574). Thus, this factor "cuts slightly" in Mr. Butler's favor. *See Metro. Life*, 84 F.3d at 574.

The Illinois Defendants next argue that New York's interest is minimal here because Plaintiff "is not, and was not, a resident of New York" and that the bulk of Plaintiff's alleged injury occurred in Illinois. (Dkt. No. 31-1, at 24–25; Dkt. No. 34, at 10). Plaintiff counters that New York has a "manifest interest in providing Plaintiff with a convenient forum," particularly since New York "recently expanded the statute of limitations for victims of child sex abuse" by passing the Child Victims Act.[13] (Dkt. No. 32, at 11). The Court agrees with Plaintiff.

Echoing the Supreme Court, the Second Circuit has emphasized that a forum state has a "manifest interest in providing effective means of redress for its residents." *Chloe*, 616 F.3d at 173 (quoting *Burger King*, 471 U.S. at 483). Here, Plaintiff is a resident of Florida, not New York. (Dkt. No. 2, ¶ 30). Nevertheless, the Court finds, as Plaintiff urges, that New York has a

---

[13] The Child Victims Act, effective February 19, 2019, added section 214-g to the N.Y. C.P.L.R. "and created a one-year window to bring otherwise time-barred claims for conduct 'which would constitute a sexual offense'" in violation of New York Penal Law "in certain circumstances." *Doe v. Indyke*, No. 19-cv-7773, 2020 WL 3073219, at *4, 2020 U.S. Dist. LEXIS 101514, at *12 (S.D.N.Y. June 9, 2020) (quoting N.Y. C.P.L.R. 214-g).

"special public policy interest in the subject matter of this litigation," which it has indicated by enacting the Child Victims Act.[14] *See City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 342 (E.D.N.Y. 2007) ("By enacting strong gun control laws to protect its citizens from gun-related crimes New York has expressed a special public policy interest in the subject matter of this litigation."); *see also In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 367–68 (S.D.N.Y. 2002). Moreover, contrary to the Illinois Defendant's contention, it appears from Plaintiff's Complaint that "a significant aspect of the wrongful conduct alleged in the Complaint occurred in New York."[15] *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 698 (S.D.N.Y. 2018). (Dkt. No. 2, ¶ 18). Thus, after balancing the relevant factors, the Court finds this is "not one of the rare cases in which the exercise of jurisdiction would be unreasonable despite the fact that plaintiff has satisfied the state-law and minimum contacts analyses." *Leon v. Shmukler*, No. 13-cv-3185, 2015 WL 13858434, at *6, 2015 U.S. Dist. LEXIS 196603, at *14 (E.D.N.Y. Sept. 22, 2015). Thus, as to Mr. Butler, the Illinois Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### 4.    Cheryl Butler

Plaintiff argues that the Court has personal jurisdiction over Ms. Butler because the Court has "supplemental jurisdiction" over the claims against her under 28 U.S.C. § 1367. The Illinois

---

[14] The Court is mindful that Plaintiff's interest in proceeding in a forum with a "more generous statute of limitations" is not a "permissible consideration[]in the context of a jurisdictional inquiry." *See Metro. Life*, 84 F.3d at 574 ("The question of the applicability of [the forum state's] statute of limitations . . .  presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice of law concerns should complicate or distort the jurisdictional inquiry." (alteration in original) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984))).

[15] The Illinois Defendants also state that "nearly all evidence and witnesses are located in Illinois." (Dkt. No. 31-1, at 25). The validity of this assertion is uncertain. To be sure, the Butlers reside in Illinois and GLV is incorporated with its principal place of business there. (Dkt. No. 2, ¶ 33; Dkt. No. 31-3, ¶¶ 3, 14; *id.* at 7; Dkt. No. 31-4, ¶ 2). However, Plaintiff resides in Florida, some of the alleged events described took place in New York (and elsewhere), and the parties have not described where witnesses and other sources of evidence are likely to be located.

Defendants argue that Plaintiff has failed "to connect any action of [Ms. Butler] to the State of New York." (Dkt. No. 31-1, at 10, 16). The Court agrees with the Illinois Defendants.

Plaintiff's argument as to Ms. Butler misses the mark. "Supplemental jurisdiction deals with subject matter jurisdiction, not personal jurisdiction." *Colonomos v. Ritz-Carlton Hotel Co., LLC*, No. 98-cv-2633, 2002 WL 732113, at *4, 2002 U.S. Dist. LEXIS 7315, at *13 (S.D.N.Y. Apr. 25, 2002) (footnote omitted) (quoting *Huff v. Chandris SA,* 1994 WL 414467, *4, 1994 U.S. Dist. LEXIS 10928, at *12 (S.D.N.Y. Aug. 8, 1994)). Personal jurisdiction "must be independently established as to each defendant." *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 457 n.13 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. 2005). "The existence of supplemental jurisdiction over plaintiff's claims thus does not aid plaintiff in demonstrating personal jurisdiction over [the defendant]." *Id.*; *Doppelt v. Perini Corp.*, No. 01-cv-4398, 2002 WL 392289, at *4, 2002 U.S. Dist. LEXIS 4128, at *11 (S.D.N.Y. Mar. 13, 2002) ("Even assuming *arguendo* that the Court has supplemental jurisdiction over the claims brought by plaintiff, the Court still must have personal jurisdiction over each and every defendant in order to adjudicate the claims brought against that defendant.") (citation omitted), *aff'd*, 53 F. App'x 174 (2d Cir. 2002). Thus, the Illinois Defendants' motion to dismiss the claims against Ms. Butler for lack of personal jurisdiction is granted.[16]

---

[16] To the extent Plaintiff argues that the Court has personal jurisdiction over Ms. Butler under the doctrine of "pendent personal jurisdiction," that argument fails. Under that doctrine, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 481 (S.D.N.Y. 2012) (quoting *Rolls–Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008)), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). Here, the doctrine is inapplicable because Plaintiff has not established that this Court has personal jurisdiction over Ms. Butler with respect to any of her claims.

### B.      Improper Venue

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure

12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Spiciarich v. Mexican*

*Radio Corp.*, No. 14-cv-9009, 2015 WL 4191532 at *2, 2015 U.S. Dist. LEXIS 89924, at *6

(S.D.N.Y. Jul. 10, 2015). If the Court "chooses to rely on pleadings and affidavits, the plaintiff

need only make a prima facie showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353,

355 (2d Cir. 2005) (alteration in original) (quoting *CutCo,* 806 F.2d at 364–65). "In analyzing

whether the plaintiff has made the requisite prima facie showing that venue is proper," a court

views "all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d

378, 384 (2d Cir. 2007).

The Illinois Defendants argue that venue in the Northern District of New York is

improper because Plaintiff has failed to establish that a "substantial part of the events . . . giving

rise to the claim occurred" in the District. (Dkt. No. 31-1, at 26–27). *See* 28 U.S.C. § 1391(b)(2).

Plaintiff argues that the venue statute "does not require that the *most* substantial part of the

events giving rise to the claim occurred in the Northern District, just that the event was

substantial." (Dkt. No. 32, at 12). The Court agrees with Plaintiff.

"[T]he civil venue statute permits venue in multiple judicial districts as long as 'a

substantial part' of the underlying events took place in those districts." *Gulf Ins.*, 417 F.3d at 356

(quoting § 1391(b)(2)). The Circuit has "caution[ed] district courts to take seriously the adjective

'substantial'" and to "construe the venue statute strictly." *Id.* at 357. When, as here, "a plaintiff

relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court

should identify the nature of the claims and the acts or omissions that the plaintiff alleges give

rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

Second, the court should "determine whether a substantial part of those acts or omissions

occurred in the district where suit was filed." *Id.* That is, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins.*, 417 F.3d at 357. "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

Here, Plaintiff alleges that Mr. Butler sexually abused her multiple times, including in Syracuse, Canada, Germany, and Illinois. (Dkt. No. 2, ¶¶ 18–22, 38). Plaintiff alleges that Mr. Butler raped her "multiple times," including at his home and in Germany. (Dkt. No. 2, ¶¶ 21–22). "Courts considering venue for claims of sexual abuse and other sexual misconduct have held that where the alleged wrongful acts occurred in more than one state, venue is proper in any of those states even if the proportion of the total misconduct that occurred in a particular state is relatively small." *Haynes v. Haggerty*, No. 19-cv-00164, 2020 WL 2557230, at *2, 2020 U.S. Dist. LEXIS 88303, at *5 (D. Vt. May 19, 2020) (collecting cases). Furthermore, Plaintiff alleges that Mr. Butler's "inappropriate sexual contact" began while her volleyball team was in Syracuse and that the conduct "only escalated from there." (Dkt. No. 2, ¶ 18). The events in Syracuse could support Plaintiff's claim even without the later sexual abuse elsewhere. Thus, the Court finds Plaintiff has met her burden and established that venue under § 1391(b)(2) is proper in this District. The Illinois Defendants' motion to dismiss on this basis is therefore denied.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant USA Volleyball's motion to dismiss for lack of personal jurisdiction (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that the Illinois Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. No. 31) is **GRANTED in part,** only as to Defendants GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center and Cheryl Butler; and it is further

**ORDERED** that the Clerk is directed to terminate Defendants (1) USA Volleyball; (2) GLV, Inc. d/b/a Sports Performance Volleyball Club and Great Lakes Center; and (3) Cheryl Butler; and it is further

**ORDERED** that the Illinois Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. No. 31) is otherwise **DENIED**; and it is further

**ORDERED** that the Illinois Defendants' motion to dismiss for improper venue (Dkt. No. 31) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated: August 21, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

30